FILED

2014 Sep-29  AM 09:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAREE MOORE o/b/o O.S.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:13-cv-01370-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Sharee Moore, on behalf of her minor daughter O.S.G., brings this action

pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner

of Social Security ("Commissioner") denying her claim for Supplemental Security Income

("SSI") benefits.  (Doc. 1).[1]  The case has been assigned to the undersigned United States

Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The

parties have consented to the jurisdiction of this court for disposition of the matter.  (Doc. 9).

*See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law,

the undersigned finds that the Commissioner's decision is due to be affirmed.

**I.  PROCEDURAL HISTORY**

On September21, 2010, Plaintiff protectively filed an application for SSI on behalf of

O.S.G., alleging disability beginning August 1, 2010, due to a hearing impairment. (R. 121-26,

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the
Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in
the court's Case Management/Electronic Case Files (CM/ECF) system.

144).[2]   The claim was denied initially. (R. 68-69).  Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on May 15, 2012. (R. 51-67).  Following the

hearing, the ALJ found that O.S.G. is not disabled. (R. 47).

Plaintiff requested the Appeals Council to review the ALJ's decision.  (R. 25-26).  The

Appeals Council denied the request for review on May 20, 2013. (R. 1-5).  On that date, the

ALJ's decision became the final decision of the Commissioner.  Plaintiff then filed this action for

judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The

function of the court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*,

402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th

Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983).  Substantial evidence is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a

preponderance."  *Id.*

The court must uphold factual findings that are supported by substantial evidence.

However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity

attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*,

---

[2]References to "R.___" are to the page number of the administrative record, which is encompassed within Docs. 7-1 through 7-11.

985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the

law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper

legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936

F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

An individual under the age of 18 is considered disabled if she "has a medically

determinable physical or mental impairment, which results in marked and severe functional

limitations, and which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).  Social

Security regulations provide a three-step sequential evaluation process for determining whether a

child is disabled.[3]  20 C.F.R. § 416.924(a).  The Commissioner must determine in sequence (1)

whether the child is engaged in substantial gainful activity; (2) whether the child has an

impairment or combination of impairments that is severe; and (3) whether the child has an

impairment that meets, medically equals, or functionally equals the Listing of Impairments.[4]  *Id.*;

*see also Gibbs v. Barnhart*, 130 F. App'x 426, 428-29 (11th Cir. 2005) (citing 20 C.F.R. §

416.924(a)).

An impairment is "medically equal" to a listed impairment if it is "at least equal in

severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).  An

impairment is "functionally equal" to a listed impairment if it is "of listing-level severity; i.e., it

---

[3] The regulations promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

[4] The Listing of Impairments (also referred to as the "Listings") is located at 20 C.F.R. pt. 404, subpt. P, app. 1.

must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).  The regulations identify six domains of functioning to be considered in determining whether a child's impairment is functionally equal to a listed impairment: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i-vi).  A "marked" limitation in a domain of functioning is found when an impairment "seriously" interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation in a domain is found when an impairment "very seriously" interferes with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

## IV.  FINDINGS OF THE ALJ

At the time of the ALJ's decision, O.S.G. was four years old.  (R. 56).  The ALJ found that O.S.G. has the severe impairments of bilateral sensorineural hearing loss and a mixed receptive and expressive language delay, but that her impairments do not meet or medically equal the criteria of Listing 102.10, the listing for children's hearing loss not treated with cochlear implantation. (R. 33-34).  The ALJ further found that O.S.G.'s impairments do not functionally equal a listing. (R. 35).  In making this finding, the ALJ specifically found that O.S.G. has a less than marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks; a marked limitation in interacting and relating with others; a less than marked limitation in moving about and manipulating objects; a less than marked limitation in her ability to care for herself; and a less than marked limitation in her health and physical well-

being. (R. 38-47).  The ALJ thus concluded that O.S.G. is not disabled. (R. 47).

### V.  ANALYSIS

Plaintiff's primary argument is that the ALJ erred in failing to analyze O.S.G.'s

impairments from the standpoint of "medical equivalence." (Doc. 12 at 5-12).  As part of this

challenge, she asserts that the ALJ erred in reciting the criteria for Listing 102.10(B), the hearing

loss section pertaining to children age five and older. (*Id.* at 6-7).  Plaintiff further argues that the

ALJ erred in failing to obtain a medical expert to assist him in making the medical equivalence

determination and the functional equivalence determination. (*Id.* at 12-15).  Finally, she argues

that the ALJ erred in rejecting opinions from a treating physician and from one of O.S.G.'s

teachers. (*Id.* at 15).  After carefully reviewing the evidence in the record, the court concludes

that none of Plaintiffs' arguments warrants reversal of the ALJ's decision.

### A.     Medical Equivalence

The ALJ found that O.S.G. "does not have an impairment that meets or medically equals

the criteria of any impairment included in the Listing of Impairments," noting that "[n]o

examining or treating medical source has reported that the claimant has an impairment that

medically equals the criteria of a listed impairment." (R. 34).  Plaintiff does not dispute that

O.S.G. does not have an impairment that meets the criteria of a listed impairment, but challenges

the ALJ's finding with respect to medical equivalence.  She argues that the ALJ did not cite the

correct section of Listing 102.10 and "circumvent[ed] an analysis of the impairments in

combination and from the standpoint of medical equivalence." (Doc. 12 at 6).

Plaintiff is correct that the ALJ cited the wrong section of Listing 102.10.  O.S.G. was

four years old at the time of the ALJ's decision. (R. 56)  The ALJ cited the criteria of Listing

102.10(B), which applies to hearing loss not treated with cochlear implantation for children from age five to the attainment of age eighteen. (R. 34). He should have cited the criterion of Listing 102.10(A), the listing for children from birth to the attainment of age five.

Although the ALJ erred in citing the wrong section of Listing 102.10, Plaintiff has failed to demonstrate how the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"). To meet Listing 102.10(A), a child must have an average air conduction hearing threshold of 50 decibels or greater in the better ear. 20 C.F.R. pt. 404, subpt. P, app. 1, § 102.10(A). Plaintiff makes no argument that O.S.G.'s hearing loss meets this criterion and points to no medical findings of equal medical significance. *See* 20 C.F.R. § 416.926(b)(1)(ii) ("We will find that your impairment is medically equivalent to [a] listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria."). Indeed, when O.S.G.'s unaided hearing was tested on August 16, 2010 (just over two weeks after her alleged disability onset date), her test results revealed a speech threshold awareness of approximately 25 decibels in her right ear and 25 decibels in her left ear. (R. 267-75). After tubes were implanted in her ears, test results revealed hearing loss that was just "mild to moderate" with a speech threshold awareness of 20 decibels in her right ear and 15 decibels in her left ear. (R. 245-50). O.S.G. was then prescribed hearing aids; test results indicated that her aided hearing "meets targets." (R. 241-44). Her most recent test results, from November 2011, reflect an unaided speech threshold awareness of 20 decibels in each ear and an aided speech threshold awareness of 10 decibels in her better-hearing ear. (R. 354-55). All of these medical findings support the conclusion that O.S.G.'s hearing loss does not meet or

medically equal Listing 102.10(A).  Plaintiff cites no evidence to the contrary.

Plaintiff devotes more than a third of her brief to quoting the preamble to Listing 102.10 regarding audiometric testing, the "speech or language" criteria of Listing 102.10(B)(3), and the considerations used to evaluate impairments that do not meet a listing, but offers no corresponding analysis or citation to any evidence that would support a finding of medical equivalence. (Doc. 12 at 7-12).  In this regard, the court would note that Plaintiff has identified no deficiencies in the audiometric testing procedures used to assess O.S.G.'s hearing loss.  The court would further note that the "speech or language" criteria of Listing 102.10(B)(3) do not apply here; as Plaintiff herself has pointed out, Listing 102.10(B) pertains to children age five and older.

In sum, notwithstanding the ALJ's failure to cite the correct section of Listing 102.10, his finding that O.S.G.'s impairments do not meet or medically equal that listing is supported by substantial evidence.  Plaintiff has identified no evidence in the record that would support a contrary finding.

**B.      Medical Expert Opinion**

Plaintiff also argues that the ALJ erred in failing to obtain the services of a medical expert to assist him in applying the medical equivalence standard and to assist him in assessing the "functional domains." (Doc. 12 at 12, 15).  No such medical expert was required or necessary.

With respect to determining medical equivalence, the regulations provide that the ALJ will consider "all evidence in your case record about your impairment(s) and its effect on you ... [and will] also consider the opinion given by one or more medical or psychological consultants

designated by the Commissioner." 20 C.F.R. § 416.926(c).  Social Security Ruling 96-6p

clarifies the Commissioner's policy that "the judgment of a physician (or psychologist)

designated by the Commissioner on the issue of equivalence on the evidence before the

administrative law judge ... must be received into the record as expert opinion and given

appropriate weight." SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996); *see also Wilkinson v.*

*Bowen*, 847 F.2d 660, 663 (11th Cir. 1987) ("When considering medical equivalence, the

Secretary [now the Commissioner] must consider the medical opinion of one or more designated

physicians on an advisory basis.").

Here, the record contains a Childhood Disability Evaluation Form completed by Dr.

Richard Walker, a state agency consulting physician engaged to review the evidence of record

and to opine on O.S.G.'s impairment. (R. 293-98).  Dr. Wilson determined that O.S.G.'s hearing

loss is a "Greater Than Not severe impairment" and that the impairment does not meet or

medically equal a listing. (R. 292-93, 298).  The ALJ gave Dr. Wilson's opinion "significant

weight," noting that Dr. Wilson "provided specific reasons for his opinion indicating that it was

based on the evidence of record, including careful consideration of the objective medical

evidence and the claimant's allegations regarding symptoms and limitations." (R. 37).  As

previously noted, the ALJ also observed that no treating or examining medical source had

reported that O.S.G. has an impairment that medically equals a listed impairment (R. 34), which

is consistent with Dr. Wilson's opinion.  The ALJ properly considered Dr. Wilson's opinion and

gave it appropriate weight, and there was no need for him to engage another medical expert on

the issue of medical equivalence. *See Wilkinson*, 847 F.2d at 663 (noting that the ALJ could rely

on the opinion of a non-examining medical consultant in deciding medical equivalence).

With respect to functional equivalence, "the responsibility for deciding functional equivalence rests with the administrative law judge" at the hearing level. 20 C.F.R. §416.926a(n). As with all disability determinations, "where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony." *Logan v. Colvin*, 2014 WL 3889926, *6 (N.D. Ala. Aug. 6, 2014) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999)).

Here, the ALJ found that O.S.G. has a "marked" limitation in "interacting and relating with others" and a "less than marked" limitation in all other functional domains. (R. 38-47). These findings are supported by substantial evidence, which is thoroughly analyzed in the ALJ's written decision.  In general, the ALJ observed that O.S.G.'s functional abilities have improved since she started wearing hearing aids and started speech and language therapy sessions, as reflected in her speech therapists' records and her mother's testimony. (*See* R. 37, 308-50, 383-412).  In addition, the ALJ's findings are consistent with the opinion of Dr. Walker, who assessed the same functional limitations as the ALJ and concluded that O.S.G. does not have an impairment that functionally equals a listing. (R. 293, 295-98).  In light of the substantial evidence supporting the ALJ's findings with respect to ALJ's functional limitations, the ALJ did not err in failing to seek additional expert assistance on the issue of functional equivalence.

## C.      The Opinions of O.S.G.'s Pediatrician and Teacher

Plaintiff's final argument is that the ALJ erred in "rejecting" the opinions of Dr. Beatrice Moore, O.S.G.'s pediatrician, and Ms. Ebony Grant-Bruce, one of O.S.G.'s teachers in the "toddler 2" class. (Doc. 12 at 13-15).  Dr. Moore completed a "Child Development and Functioning Rating" form drafted by O.S.G.'s attorneys and, with no explanation or comment,

assessed O.S.G. as having "marked" limitations in all six of the functional domains. (R. 299-300).  Ms. Grant-Bruce completed a "Teacher Questionnaire" and assessed O.S.G. as having problems (of varying degree) in each of the six domains except for "moving about and manipulating objects."[5] (R. 157-64).  The court finds that the ALJ did not err in his consideration of either opinion.

The Eleventh Circuit has held that the opinion of a treating physician such as Dr. Moore "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F. 3d 1436, 1449 (11th Cir. 1997).  "Good cause" exists when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.*

Here, the ALJ gave Dr. Moore's opinion "little weight"[6] and clearly articulated his reasons for doing so:

> [T]he opinion of Beatrice Moore, M.D., the claimant's pediatrician, is inconsistent with the overall objective evidence and it is inconsistent with her own treatment records.  Dr. Moore opined that the claimant had marked limitations in all six domains [of

---

[5]Concerning the domain of "health and well-being," Ms. Grant-Brice noted that O.S.G. did not frequently miss school due to illness, but commented that her hearing and speech impairment "affected her learning as far as responding to asked questions." (R. 163).

[6]The ALJ mistakenly stated that "the opinion of *Dr. Glover* as set out in Exhibit 7" was given little weight.  (R. 39) (emphasis added).  It is clear, however, that he was referring to the opinion of Dr. Moore; Exhibit 7 is the Child Disability and Functioning Rating form completed by Dr. Moore.  (*See* R. 299-300).

functioning]. Her treatment records show that other than the claimant's hearing and speech problems and some occasional episodes of sinusitis, tinea capitis, and cellulitis, she was generally well (Exhibits 8F and 14F). Those records do not document marked limitations in the areas of attending and completing tasks, moving about and manipulating objects, and caring for herself as reported by Dr. Moore.

(R. 38). The ALJ also expressed his specific reasons for discounting Dr. Moore's opinion in his thorough analysis of the evidence relevant to each of the six functional domains. (*See* R. 39-47). The court is more than satisfied that there was good cause to discount Dr. Moore's opinion and that the ALJ's decision to give the opinion little weight is supported by substantial evidence.

Unlike Dr. Moore, Ms. Grant-Bruce is not a medical doctor. Therefore, she is not considered an "acceptable medical source" under the regulations and her opinion "cannot establish the existence of a medically determinable impairment." SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006); *see* 20 C.F.R. § 416.913(a). However, information from non-medical sources such as Ms. Grant-Bruce "may provide insight into the severity of the impairment[s] and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2.

Contrary to Plaintiff's argument, the ALJ did not "reject" Ms. Grant-Bruce's opinion. He discussed her opinion in detail in his assessment of O.S.G.'s functioning in the various domains and placed her observations in the context of the other evidence in the record. (R. 39-44). The court would also note that Ms. Grant-Bruce's opinion was based solely on her observations of O.S.G. when she was in the "toddler 2 class" and that the records from O.S.G.'s speech and language therapy sessions reflect improvement in her functional abilities since then. (*See.* R. 308-50, 383-412). In sum, the court is satisfied that the ALJ gave proper consideration to Ms. Grant-

11

Bruce's opinion.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the

Commissioner is supported by substantial evidence and is due to be **AFFIRMED**.  An

appropriate order will be entered separately.

**DONE**, this the 29th day of September, 2014.

_John E. Ott_

_____

**JOHN E. OTT**
Chief United States Magistrate Judge